UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTINA MEDINA,

                             Plaintiff,

      v.

AAM 15 MANAGEMENT, LLC,

                             Defendant.

No. 21-CV-7492 (KMK)

OPINION & ORDER

Appearances:

Christina Medina
Port Chester, NY
*Pro Se Plaintiff*

Nicholas Anthony Corsano, Esq.
Kelly Pesce, Esq.
Greenberg Traurig, LLP
New York, NY
*Attorneys for Defendant*

KENNETH M. KARAS, United States District Judge:

       Christine Medina ("Medina" or "Plaintiff") brings this Action pro se, pursuant to 42 U.S.C. §§ 2000e, *et seq.* (Title VII of the Civil Rights Act or "Title VII") and N.Y. Exec. Law §§ 290, *et seq.* (New York State Human Rights Law or "NYSHRL") against AAM 15 Management, LLC ("Defendant"), alleging failure to accommodate and wrongful termination of employment on the basis of pregnancy and retaliation in violation of the aforementioned anti-discrimination laws. (*See generally* Compl. (Dkt. No. 1).) Before the Court is Defendant's Motion To Dismiss. (*See* Not. of Mot. (Dkt. No. 21).) For the reasons that follow, Defendant's Motion To Dismiss is granted.

I. Background

A. Factual Background

Unless otherwise stated, the following facts are drawn from the Complaint, Plaintiff's January 26, 2022 Letter to the Court, and Plaintiff's Opposition. (*See generally* Compl.; Letter from Christina N. Medina to Court (January 26, 2022) ("Pl's Letter") (Dkt. No. 13); Pl's Mem. of Law in Opp'n to Def's Mot. To Dismiss ("Pl's Opp'n").)[1] The facts alleged are assumed true for the purpose of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff worked as a front desk agent at the Courtyard and Residence Inn by Marriott (the "Courtyard Inn"), a hotel acquired by Defendant in November 2019 and located in Yonkers, New York. (Compl. 5.)[2] Plaintiff worked part-time on Friday evenings and Saturday mornings. (*Id.*) On January 10, 2020, Plaintiff sent an email to AAM15 Management LLC's HR Director Kelly Correia ("Correia") notifying her that Plaintiff was pregnant, waiving any potential rights to maternity leave because Plaintiff had paid leave from her full-time employer, and inquiring about returning to work after being out on leave. (Pl's Letter 1.) Correia responded that Plaintiff

---

[1] When reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

[2] The Court cites to the ECF-stamped page number at the upper right-hand corner of all documents unless otherwise noted.

did not qualify for maternity leave but failed to address her return to work. (*Id.*; Compl. 13.) Plaintiff responded to Correia and again asked about her return to work and received no response. (Pl's Letter 1.) On January 17 and 20, 2020, Plaintiff reached out to Courtyard Inn Assistant General Manager Jamie Masterson ("Masterson") and inquired about her return to work after maternity leave. (*Id.*) After the second inquiry to Masterson, Plaintiff received a response from Correia on January 21, 2020. (*Id.*)

On March 17, 2020, Plaintiff met with Masterson and Steve Brooks ("Brooks"), an AAM 15 Management corporate representative, and was informed that she was being laid off due to the impact of COVID-19 on the hotel industry. (Compl. 5, 13; Pl's Opp'n 7.)[3] Plaintiff was in the eighth month of her pregnancy and visibly pregnant. (Compl. 13.) Plaintiff asked Brooks whether a lay off for an extended period of time would result in termination, and Brooks informed Plaintiff that she would not be terminated under those circumstances. (Pl's Opp'n 10.) Brooks also informed Plaintiff that she would be "one of the first people called to return back to work." (Pl's Opp'n 11.)

On March 26, 2020, Plaintiff sent an email to Masterson inquiring about a "laid off" letter. (Compl. 6; Pl's Opp'n 7.) Masterson replied that the HR Department had not provided a letter but that one could be drafted; she asked Plaintiff what information should be included in the letter. (Compl. 6; Pl's Opp'n 7.) On March 31, 2020, Plaintiff requested a letter that contained the information Brooks had shared during the March 17 meeting but never received a

---

[3] Plaintiff never identifies what entity employed Brooks, but the Court presumes that her description of him as "(Corporate)" in her EEOC charge, (*see* Compl. 13), indicates that he worked for AAM15 Management, LLC as opposed to the Courtyard Inn.
   Plaintiff alleges that she recorded the March 17, 2020 conversation with Masterson and Brooks but has not provided a recording to the Court. (Pl's Opp'n 10.)

3

copy. (Compl. 6; Pl's Opp'n 7, 16.) On April 15, 2020, Masterson called Plaintiff and asked for her availability to return to work. (Compl. 6; Pl's Opp'n 7, 11.) Plaintiff told Masterson she was interested in returning and could work only on Saturday mornings because she was close to giving birth. (Compl. 6; Pl's Opp'n 7, 11.) Plaintiff did not receive a call back from Masterson after this conversation, so she sent a text message on April 17 inquiring about returning to work. (Compl. 6; Pl's Opp'n 22.) Masterson replied that Plaintiff was not needed that weekend, but she would let Plaintiff know if she was needed the following week. (Compl. 6; Pl's Opp'n 22.) A week later, on April 24, Plaintiff sent Masterson another text message about returning to work but did not receive a response. (Compl. 6; Pl's Opp'n 11.) On April 29, Plaintiff called Masterson about returning to work, and Masterson again told Plaintiff she was not needed. (Compl. 6; Pl's Opp'n 7, 11.)

On June 8, 2020, Plaintiff discovered that she was unable to login to her MGS account, and she sent a text message to Masterson. (Compl. 6; Pl's Opp'n 7–8, 11.) Masterson replied that Plaintiff's account had been deactivated and could not be reactivated without approval from "corporate" because Plaintiff "was still laid off." (Compl. 6; Pl's Opp'n 8, 11.)

During the first two weeks of July, Courtyard Inn posted listings for Front Desk Agents on multiple job search websites, and General Manager Ron Czulada also sent out Weekly Updates which cited a need for front desk agents. (Pl's Opp'n 8, 15.) On July 16, 2020, Plaintiff sent a final email to Masterson inquiring about her return to work. (Compl. 6; Pl's Opp'n 8, 11.) Masterson replied that there was not a need to bring back all the staff. (Compl. 6; Pl's Opp'n 8, 11.) Plaintiff alleges that as of July 16, she was "the only employee being told . . . Defendant didn't need her to return." (Pl's Opp'n 12.) Plaintiff further alleges that "[a]ccording to the

4

[Courtyard Inn] schedules, there was a high rate of turn-over in the following months as the company hired and struggled to retain [f]ront [d]esk agents." (Pl's Opp'n 15.)

On April 20, 2021, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC') alleging that she was discriminated against in violation of Title VII on the basis of her pregnancy and terminated for the same reason. (Compl. 6, 13; Pl's Opp'n 8.)[4] On June 9, 2021, Defendant responded to the EEOC that Plaintiff had not been recalled because of her availability and that she had been terminated. (Compl. 6; Pl's Opp'n 15.) On June 15, 2021, the EEOC dismissed Plaintiff's claim and provided her with a right-to-sue letter. (Compl. 11.)

Plaintiff alleges that she is entitled to damages in the form of the "pay that [she] missed while [Defendant] did not return [her] to [her] position." (*Id*. at 7.) She also requests injunctive relief requiring Defendant to "remove[] her from [its] work records as 'terminated' and . . . return[] [her] to a 'laid off' status [so she is] eligible for rehire in [its] system" and to "undergo discrimina[tion] and bias trainings to prevent this from happening to anyone else." (*Id.*)

B.  Procedural History

Plaintiff filed her Complaint on September 9, 2021. (*See* Compl.) Defendant requested an extension of time to answer on December 20, 2021, which the Court granted the next day. (*See* Dkt. Nos. 5, 6.) On January 20, 2022, Defendant filed a letter requesting a conference prior to filing a motion to dismiss. (*See* Dkt. No. 12.) Plaintiff filed a letter in response on January 26, 2022. (*See* Dkt. No. 13.) The Court set a briefing schedule on January 28, 2022. (Dkt. No. 16.) On March 1, 2022, Defendant filed the instant Motion. (Not. of Mot.; Mem of Law in Supp of Mot. To Dismiss ("Def's Mem.") (Dkt. No. 22); Decl. of Terence P. McCourt, Esq.

---

[4] Plaintiff alleges in her Opposition that "the only notification she received of [her] termination was after [she] filed with the EEOC." (Pl's Opp'n 17.)

("McCourt Decl.") (Dkt. No. 23).) Plaintiff filed her Opposition on April 1, 2022. (Pl's Opp'n.) On April 22, 2022, Defendant filed its Reply. (Def's Reply (Dkt. No. 25).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

B. Analysis

1. Timeliness

Defendant argues that Plaintiff's claims are time-barred because Plaintiff failed to file a claim with the EEOC within 300 days of the alleged wrongful termination, which Defendant

7

argues occurred either: (1) when Brooks informed Plaintiff she was laid off on March 17, 2020 or (2) when Masterson informed Plaintiff she would not be needed on April 17, 2020. (Def's Mem. 7–9; Def's Reply 7–8.)[5] Plaintiff argues that she did timely file her claim because she is alleging discrimination on the basis of her pregnancy while she tried to return to work. (Pl's Opp'n 12.)[6]

"A plaintiff who wishes to pursue a federal employment discrimination suit under Title VII must file a charge with the EEOC within 300 days of the alleged unlawful employment practice or challenged discriminatory act." *Impellizzeri v. New York*, No. 17-CV-230, 2021 WL 4844275, at *2 (N.D.N.Y. Oct. 18, 2021); *see also Yu v. City of N.Y.*, 792 F. App'x 117, 118 (2d Cir. 2020) (summary order) ("As a precondition to bringing suit [under Title VII] in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC within 300 days of an unlawful employment practice.").

Although she brings a claim for unlawful termination and retaliation related to that termination, Plaintiff has not alleged the date that Defendant terminated her in her Complaint or

---

[5] Defendant has not challenged Plaintiff's failure to accommodate or retaliation claims as untimely, (*see generally* Def's Mem; Def's Reply), so the defense is waived as to those claims. *See Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (explaining that the "burden of pleading and proving Title VII exhaustion lies with defendants and operates as an affirmative defense").

[6] Plaintiff also argues that the statutory requirements under the NYSHRL should apply to her case (Pl's Opp'n 12), but because Plaintiff has filed in federal district court and Title VII provides the basis for this Court to exercise jurisdiction, the question is whether she has complied with the relevant federal statutory requirements, *see Flanagan v. N. Shore Long Island Jewish Health Sys.*, No. 11-CV-5246, 2014 WL 4905124, at *7 (E.D.N.Y. Sept. 30, 2014) ("An aggrieved employee wishing to bring a Title VII claim in *district court* must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act.") (emphasis added and quotation marks and citation omitted).

Opposition. (*See generally* Compl.; Pl's Opp'n.) To adjudicate the timeliness of Plaintiff's claims, the Court must make a determination as to when the termination occurred.

Plaintiff has alleged that she was informed she was being "laid off" due to the impact of COVID-19 on the hotel industry on March 17, 2020. (Compl. 6, 13; Pl's Opp'n 7.) While Defendant appears to argue that the Court should consider this as the date of her termination (Def's Mem. 8), the more logical inference is that Plaintiff was being placed on an unpaid furlough, as many workers were during the early days of the COVID-19 pandemic, *see, e.g., Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837, 2022 WL 912940, at *4 (S.D.N.Y. Mar. 28, 2022) (noting defendants in an employment discrimination action furloughed two employees on March 19, 2020); *D'Anzieri v. Harrison Glob. LLC*, No. 21-CV-8506, 2022 WL 17404254, at *2 (S.D.N.Y. Dec. 2, 2022) (explaining that defendants in employment discrimination action had furloughed plaintiff in March 2020 and later terminated her). This inference is consistent with Plaintiff's allegations that Brooks told her that she would not be terminated and also told that she would be among the first employees to return to work. (Pl's Opp'n 11.)[7]

Plaintiff first alleged she was aware that she had been terminated in her EEOC charge submitted on April 20, 2021, where she stated she had been "discharged in violation of Title VII." (Compl. 6, 13; Pl's Opp'n 8.) Thus, Plaintiff must have become aware of her termination at some point between March 17, 2020 and April 20, 2021. Taking all of her allegations as true, the Court concludes that Plaintiff became aware of her termination on or around July 16, 2020

---

[7] Defendant also argues that Plaintiff should have been aware she was terminated after she was informed that she would not be recalled on April 17, 2020. (Def's Mem. 8.) However, the Court finds this argument unpersuasive because of the reassurances Plaintiff received from Brooks on March 17, 2020. (Pl's Opp'n 11.)

because she states in her EEOC charge that at that time "other employees were recalled[;] [h]owever, I was not recalled." (Compl. 13.)[8]

Plaintiff filed her EEOC charge on April 20, 2021 alleging she was terminated unlawfully (Compl. 6, 13; Pl's Opp'n 8.), so her termination must have occurred after June 25, 2020 for Plaintiff's claim to be timely, *see Impellizzeri*, 2021 WL 4844275 at *2. Because the Court has determined that Plaintiff became aware she had been terminated on or around July 16, 2020, Plaintiff's EEOC charge was timely filed. *Tardd v. Brookhaven Nat'l Lab'y*, No. 04-CV-3262, 2008 WL 11449304, at *3 (E.D.N.Y. Jan. 3, 2008) (explaining that "'[t]he 300-day period, in the case of discriminatory discharge, starts running on the date when the employee receives a definite notice of the termination. . .[,]' [t]his is true regardless of whether the notice comes before or after the effective date of termination." (alteration in original) (quoting *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir. 1985)).

### 2. Title VII and NYSHRL Claims

Plaintiff raises claims under Title VII and the NYSHRL. Specifically, she alleges that Defendant failed to provide her with a requested accommodation during and immediately after her pregnancy and terminated her because of her pregnancy. (Compl. 6; Pl's Opp'n 14–15.) She also claims she was terminated in retaliation for filing the EEOC charge. (Compl. 6; Pl's Opp'n 17.) Defendant argues that Plaintiff has failed to state a claim for employment discrimination

---

[8] Plaintiff repeats this allegation in her Opposition, explaining that by July 16, she was "*the only employee* being told . . . Defendant didn't need her to return." (Pl's Opp'n 12 (emphasis added).)
  Plaintiff has alleged in her Opposition that "the only notification she received of [her] termination was after [she] filed with the EEOC." (Pl's Opp'n 17.) However, this statement is consistent with the Court's interpretation of the timing of her termination. Although Plaintiff claimed she had been discharged in her EEOC charge, she apparently did not receive notice from Defendant of that discharge prior to filing with the EEOC.

because she has not adequately alleged any evidence of discriminatory intent and that her own factual allegations foreclose a retaliation claim. (Def's Mem. 9–11.)

Title VII prohibits employers from discharging any individual "because of such individual's race" or "sex." 42 U.S.C. § 2000e-2(a)(1). The Pregnancy Discrimination Act amended Title VII to clarify that sex discrimination includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

To establish a claim for discrimination under Title VII, a plaintiff must demonstrate the adverse employment decision was motivated, at least in part, by "an impermissible reason, such as race, ethnic origin, or gender." *Fields v. N.Y. State Off. of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 119 (2d Cir. 1997). "The NYSHRL mirrors these federal obligations." *Brown v. Daikin Am., Inc.*, 756 F.3d 219, 226 (2d Cir. 2014).

Claims for discrimination under Title VII and the NYSHRL are analyzed under the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brown*, 756 F.3d at 228–29 (discussing the McDonnell Douglas framework for Title VII); *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) ("Claims under both Title VII and the NYSHRL, including sex and pregnancy discrimination, are generally treated as 'analytically identical,' and addressed together." (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019))).

Under this framework, a plaintiff must first show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). Similarly, "[w]here . . . [an] employee alleges a failure to accommodate her pregnancy . . . she must plead sufficient facts

11

to show '[1] that she belongs to the protected class, [2] that she sought accommodation, [3] that the employer did not accommodate her, and [4] that the employer did accommodate others similar in their ability or inability to work.'" *Xiang v. Eagle Enterprises, LLC*, No. 19-CV-1752, 2020 WL 248941, at *4 (S.D.N.Y. Jan. 16, 2020) (quoting *Legg v. Ulster Cnty.*, 820 F.3d 67, 73 (2d Cir. 2016)). If a plaintiff successfully makes either showing, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory purpose for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802. Finally, if an employer satisfies this requirement, the burden shifts back to the employee to demonstrate, by a preponderance of the evidence, that the non-discriminatory reason was actually a pretext for discrimination. *See id.* 804–05; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) (articulating the three step McDonnell Douglas framework).

Because "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (italics omitted), the Court need only concern itself with the first phase of the *McDonnell Douglas* framework, s*ee Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL 6068597, at *1 (S.D.N.Y. Nov. 15, 2013) ("[A][p]laintiff need not make out a prima facie case at the pleading stage, and may withstand a motion to dismiss by providing a short and plain statement of the claim that shows that she is entitled to relief that gives [the defendant] fair notice of the . . . discrimination claim and the grounds upon which it rests." (italics and citation omitted)); *see also Xiang*, 2020 WL 248941, at *4 ("Whether an employee is alleging wrongful termination or a discriminatory failure to accommodate, the requirements to establish a prima facie case are minimal, and a plaintiff's burden is therefore not onerous." (citation, alterations, and quotation marks omitted)). And

"[a]lthough [the] [p]laintiff need not allege facts sufficient to make out a prima facie case for any of her discrimination claims in her [c]omplaint, the elements thereof provide an outline of what is necessary to render her claims for relief plausible." *Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011) (italics omitted); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 & n.9 (2d Cir. 2015) (noting that while a plaintiff need not plead a prima facie case of discrimination, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim" (quotation marks and citation omitted)); *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d. 301, 312–13 (S.D.N.Y. 2015) (collecting cases); *Barker v. UBS AG*, No. 09-CV-2084, 2011 WL 283993, at *5 (D. Conn. Jan. 26, 2011) ("[E]ven though establishing a prima facie case of . . . discrimination is not necessary to survive a motion to dismiss, courts do use the standard as a guidepost when determining whether the plaintiff has provided the defendant with fair notice of her claim, as required by the Federal Rules of Civil Procedure.").

### a. Failure to Accommodate

Plaintiff has adequately alleged that she was a pregnant person at the time of the relevant events and that she requested an accommodation to work on a modified schedule in the final month of her pregnancy. (Pl's Opp'n 14–15.) However, Plaintiff has failed to allege that Defendant refused to accommodate her. (*Id.*) According to Plaintiff's allegations, Masterson asked when she was available to work, and Plaintiff indicated that she could work only on Saturday mornings because of the impending birth. (Compl. 6; Pl's Opp'n 7, 11.) Masterson agreed to the modified schedule. (*Id.*) When Plaintiff inquired two days later whether she was needed at that time, Masterson informed her she was not. (Compl. 6; Pl's Opp'n 22.) When Plaintiff requested to return to work later in April, June, and July, her allegations suggest that she asked whether Masterson needed her to work the same shift, and Masterson either did not reply

or told Plaintiff she was not needed to work at that time. (Compl. 6; Pl's Opp'n 7–8, 11.) At no point did Masterson explicitly deny Plaintiff's requested accommodation, and Plaintiff has alleged no facts that support an inference that she was attempting to deny the accommodation surreptitiously. *Cf. Felumero v. Modest Cmty. Servs. Ass'n, Inc.*, No. 17-CV-04085, 2020 WL 1643482, at *4 (E.D.N.Y. Mar. 31, 2020) (granting summary judgment to defendants on failure to accommodate claim where plaintiff—who worked part-time—received her requested accommodation, even though the accommodation incidentally resulted in plaintiff working fewer hours each week), *appeal dismissed* (Aug. 14, 2020); *cf. Xiang*, 2020 WL 248941, at *4 (S.D.N.Y. Jan. 16, 2020) (finding plaintiff stated a claim where she alleged that the defendant did not offer an accommodation to her but provided it to plaintiff's team members).

Similarly, Plaintiff has failed to allege that Defendant provided accommodations to other employees who were similar in their ability to work. *See id.* at *4. Plaintiff does allege that by July 16, 2020, all other employees had returned to work except for her. (Pl's Opp'n 12.) However, Plaintiff does not allege that any of the other employees were similar in their ability to work or that they requested or received accommodations of any sort, including schedule modifications, while returning. *See Barton v. Warren Cnty.*, No. 19-CV-1061, 2020 WL 4569465, at *14 (N.D.N.Y. Aug. 7, 2020) (dismissing claim where plaintiff failed to allege facts showing how defendant had accommodated other employees similar in their ability to work); *Biehner v. City of N.Y.*, No. 19-CV-9646, 2021 WL 4924838, at *5 (S.D.N.Y. Oct. 20, 2021) (finding that plaintiff's failure to allege that "those outside of her protected class were treated differently from her" counseled dismissal of her claim), *reconsideration denied*, No. 19-CV-9646, 2021 WL 5827536 (S.D.N.Y. Dec. 7, 2021); *Reyes v. Westchester Cnty. Health Care Corp.*, No. 21-0410, 2021 WL 4944285, at *3 (2d Cir. Oct. 25, 2021) (summary order)

14

(affirming dismissal of plaintiff's claim where she had failed to allege that "her employer was more willing to accommodate other employees who were similarly physically limited"), *cert. denied*, 142 S. Ct. 1671 (2022).

Because Plaintiff has failed to adequately allege Defendant's failure to accommodate her pregnancy, her claim is dismissed.

### b.  Wrongful Termination

As noted above, Plaintiff has adequately alleged her protected status (Pl's Opp'n 14), and she has plausibly alleged that she was qualified for her position, (*id.*).  Plaintiff has also adequately pled that she experienced an adverse employment action: the termination of her position, *see Vega*, 801 F.3d at 85 ("Examples of materially adverse changes include termination of employment. . . ."), so the Court need only address whether the circumstances as alleged give rise to an inference of discrimination, *see Weinstock*, 224 F.3d at 42.

The Court finds that Plaintiff has failed to meet her minimal burden to establish discriminatory intent because her Complaint is devoid of *any* facts that give rise to the suggestion that Defendant or its personnel were motivated by discriminatory animus in their interactions with her.  Plaintiff has failed to allege that Defendant criticized her performance or made any invidious comments based on her pregnancy or her gender.  *See Littlejohn*, 795 F.3d at 312 (noting that indicia of discriminatory intent may include "the employer's criticism of the plaintiff's performance in . . . degrading terms; or its invidious comments about others in the employee's protected group").  While Plaintiff does allege that all other employees were allowed to returned to work except for her, Plaintiff has not alleged that any of these employees were pregnant or whether they were treated differently than non-pregnant employees.  *See Salas v. N.Y.C. Dep't. of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) ("An inference of discrimination can be drawn from circumstances including . . . 'preferential treatment given to

employees outside the protected class[.]'" (alteration in original) (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)).  Plaintiff has not alleged that she was replaced by a non-pregnant employee. *See Biehner*, 2021 WL 4924838, at *5 (dismissing claim where the plaintiff had "not claim[ed] that she was replaced by a non-pregnant or male employee"); *cf. Spadaro v. McKeon*, 693 F. Supp. 2d 183, 190–91 (N.D.N.Y. 2010) (finding, at summary judgment, that evidence that plaintiff was replaced with non-pregnant, male employee was sufficient to establish prima facie case of pregnancy discrimination); *Habe v. 333 Bayville Ave. Rest. Corp.*, No. 09-CV-1071, 2012 WL 113501, at *3 (E.D.N.Y. Jan. 13, 2012) (same).  Nor do Plaintiff's allegations concerning the timing of her termination, which occurred more than six months after she informed Defendant of her pregnancy, give rise to an inference of discriminatory intent.  *Compare Rinsler v. Sony Pictures Ent., Inc.*, No. 02-CV-4096, 2003 WL 22015434, at *6 (S.D.N.Y. Aug. 25, 2003) (finding gap of three months between disclosure of pregnancy and adverse employment action did not give rise to inference of discriminatory intent where plaintiff failed to allege any other circumstantial evidence of discrimination), *with Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 129 (E.D.N.Y. 2011) (concluding prima facie case was established where plaintiff had provide notice of her anticipated return date from pregnancy leave and was terminated the same day), *and Smith v. K & F Indus., Inc.*, 190 F. Supp. 2d 643, 649 (S.D.N.Y. 2002) (drawing inference of discrimination where termination occurred one month subsequent to disclosure of pregnancy), *and Klausner v. Indus. Risk Insurers, Inc.*, No. 98-CV-1267, 1999 WL 476285, at *4 (S.D.N.Y. July 8, 1999) (same).

Because Plaintiff has failed to establish Defendant's discriminatory animus, her wrongful termination claim must be dismissed.  *See Biehner*, 2021 WL 4924838, at *5 (dismissing

pregnancy discrimination claim where complaint was devoid of facts to support "plaintiff's allegations that the defendants were motivated by her gender").

### c. Retaliation

Plaintiff claims that she was terminated in retaliation for filing the EEOC charge. (Compl. 6; Pl's Opp'n 17.) Defendant argues that a retaliation claim is foreclosed by Plaintiff's statement in the EEOC charge that she had already been terminated prior to filing the charge. (Def's Mem. 11; Def's Reply 8–9.)

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). In other words, "Title VII forbids an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII." *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). To state a claim, a plaintiff must establish that: "[1] a plaintiff was engaged in protected activity; [2] the alleged retaliator knew that [the] plaintiff was involved in protected activity; [3] an adverse decision or course of action was taken against [the] plaintiff; and [4] a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002) (citation and quotation marks omitted); *accord McGuire-Welch v. House of the Good Shepherd*, 720 F. App'x 58, 62 (2d Cir. 2018) (summary order). "A plaintiff's burden at this prima facie stage is de minimis." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (italics omitted). Retaliation claims under § 1983 and the NYSHRL are subject to the same standard. *See Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 343–44 (S.D.N.Y. 2017) (treating retaliation claims under Title VII, § 1983, and the NYSHRL under the same standard), *aff'd*, 788 F. App'x 779 (2d. Cir. 2019) (summary order).

Even assuming arguendo that she satisfies the other requirements to state a claim for retaliation, Plaintiff cannot plausibly allege that she was terminated for filing the EEOC charge because, as she alleged in the charge itself, she had already been terminated when she filed. (*See* Compl. 13.) Thus, Plaintiff's retaliation claim must be dismissed.

### 3. Promissory Estoppel

Plaintiff also alleges that the doctrine of promissory estoppel bars her termination because she and Brooks had a "verbal agreement" that her employment would not be terminated after even a prolonged layoff. (*See* Pl's Opp'n 16.) Defendant argues that Plaintiff's claim is irrelevant to Plaintiff's claims and so must be dismissed. (*See* Def's Reply 5.)

Because the promissory estoppel claim does not present a federal question, *see* 28 U.S.C. § 1331, and because Plaintiff has not alleged that she is diverse with respect to Defendants, *see id.* § 1332, the Court may entertain these claims only pursuant to a theory of supplemental jurisdiction, *see id.* § 1367. Where a court "has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction" over any remaining claims. *See id.* § 1367(c)(3). Courts look to several factors in exercising their discretion, and "'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

There is nothing that separates this case from the usual case where courts typically decline to exercise jurisdiction over state law claims when all federal claims are dismissed before trial. *See Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) ("As all of [the] [p]laintiff's federal claims have been dismissed, the Court declines to exercise

18

supplemental jurisdiction over [the] [p]laintiff's state law claims."); *see also Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *1 (E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction over state claims, because no federal claims survived a motion to dismiss); *Williams v. Berkshire Fin. Grp., Inc.*, 491 F. Supp. 2d 320, 329 (E.D.N.Y. 2007) (same). Accordingly, Plaintiff's promissory estoppel claim is dismissed without prejudice.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is granted.  Because this is the first adjudication of Plaintiff's claims, the Complaint is dismissed without prejudice.  Plaintiff may file an amended complaint within 30 days of the date of this Opinion & Order.  The amended complaint will replace, not supplement, the original complaint.  Failure to file an amended complaint could result in dismissal of this case with prejudice.  The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 21.)

SO ORDERED.

Dated:   March 27, 2023
         White Plains, New York

KENNETH M. KARAS
United States District Judge