UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINA MEDINA,

                              Plaintiff,

         v.

AAM 15 MANAGEMENT LLC,

                              Defendant.

No. 21-CV-7492 (KMK)

OPINION & ORDER

Appearances:

Katherine A. Greenberg, Esq.
Dana V. Bolger, Esq.
A Better Balance
New York, NY
*Counsel for Plaintiff*

Nicholas A. Corsano, Esq.
Kelly Pesce, Esq.
Greenberg Traurig, LLP
New York, NY; Boston, MA
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

         Plaintiff Christina Medina ("Plaintiff") brings this Action against AAM 15 Management,

LLC ("Defendant"), alleging a variety of violations of Title VII of the Civil Rights Act of 1964,

42 U.S.C. §§ 2000e, et seq. ("Title VII"), and the New York State Human Rights Law, N.Y.

Exec. Law §§ 290, *et seq.* (the "NYSHRL").  (*See generally* Second Am. Compl. ("SAC") (Dkt.

No. 40).)[1]  Specifically, Plaintiff alleges, among other things, that Defendant discriminated

against her on the basis of her status as a pregnant woman while she was an employee at two of

---

[1] Unless otherwise noted, the Court cites to the ECF-stamped page number in the upper-right corner of each page it cites from the record.

Defendant's hotels.  (*See id.* ¶¶ 73–88.)  Before the Court is Defendant's Partial Motion To

Dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion").  (*See* Not.

of Mot. (Dkt. No. 44).)  For the reasons that follow, Defendant's Motion is granted in part and

denied in part.

## I.  Background

### A.  Factual Background

Unless otherwise stated, the following facts are drawn from the SAC.  The facts alleged

therein are assumed true for the purpose of resolving the instant Motion.  *See Buon v. Spindler*,

65 F.4th 64, 69 n.1 (2d Cir. 2023).

#### 1. The Parties

Defendant is a private equity investment and management company that operates hotels,

including a Courtyard by Marriott located in Yonkers, NY, as well as a Residence Inn by

Marriott, also located in Yonkers, NY (the "Hotels").  (SAC ¶ 16.)  Defendant acquired the

Hotels in November 2019.  (*See id.* ¶ 22.)

In addition to her job as a schoolteacher, Plaintiff has worked at various Marriott hotels—

including the Hotels—since 2005.  (*See id.* ¶¶ 2, 20, 23.)  In 2019, Plaintiff began working at the

Hotels as a front desk agent.  (*Id.* ¶ 21.)  During her tenure at the Hotels, her supervisor was

Jamie Masterson.  (*See id.* ¶ 24.)  While school was in session, Plaintiff usually worked as a front

desk agent at the Hotels on Friday evenings from around 5 p.m. to 11 p.m., and Saturday

mornings from around 7 a.m. to 3 p.m. (*Id.* ¶ 23.)  And when schools were on break for the

summer, Masterson often assigned Plaintiff extra shifts in addition to her regular Friday evening

and Saturday morning shifts, such that she worked up to four or five days per week in various

positions, including as a rooms inspector, night auditor, and in the kitchen conducting food

preparation, on top of her work as a front desk agent.  (*Id.* ¶ 24.)

2

During her time working at the Hotels for Defendant, Plaintiff earned a reputation as "one of the higher skilled desk agents," according to General Manager Ron Czulada. (*Id.* ¶ 25.) Moreover, as alleged, Plaintiff was a responsible employee with a strong performance and attendance record. (*Id.* ¶ 26.)

### 2. Plaintiff's Pregnancy

In 2019, Plaintiff learned that she was pregnant. (*Id.* ¶ 27.) Her doctor advised her that she would need to take at least six weeks off from work to recover from the delivery. (*Id.* ¶ 28.) In late October and early November 2019, Plaintiff experienced a pregnancy-related condition known as a subchorionic hemorrhage, which required her to go to an urgent care clinic. (*Id.* ¶ 29.) Upon her return to work, she provided Masterson a health provider's note disclosing that pregnancy-related condition. (*Id.*)

### 3. Plaintiff's Request for Time Off to Recover from Childbirth

On January 10, 2020, Plaintiff emailed Defendant's Human Resources Director Kelly Correia to inform her that she was pregnant and due on May 26, 2020. (*Id.* ¶ 30.) In that same email, Plaintiff requested job-protected time off to recover from childbirth, stating "I do want to make sure that my job/position will be held for me because I do plan to come back to work." (*Id.* ¶ 31.)

Correia replied to Plaintiff on January 13, 2020. (*See id.* ¶ 34.) Specifically, Correia responded, saying that Plaintiff was ineligible for leave under the Family and Medical Leave Act ("FMLA"). (*Id.*) Correia did not engage with Plaintiff's request for job-protected time off to recover from childbirth beyond her FMLA remark, and failed to otherwise suggest alternative accommodations. (*Id.*)

Also on January 13, 2020, Plaintiff responded to Correia to reiterate that she was not trying to take FMLA leave; instead, she was requesting that Defendant allow her to return to her

position after she gave birth.  (*Id.* ¶ 35.)  In particular, Plaintiff wrote:  "What is the process?  Will I need to re-apply for [my] position?  Will my position be held for me?"  (*Id.*)

Correia did not immediately respond to Plaintiff.  (*See id.* ¶ 36.)  So, four days later—on January 17—Plaintiff emailed Masterson to ask for help getting the answer to her questions.  (*Id.* ¶ 37.)  Specifically, she wrote:  "I want to come back after I'm home with my newborn, I hope you can understand that.  I just want to be clear in terms of how I am coming back to work or do I need to come back right after giving birth for at least one day a week to keep my job?"  (*Id.*)

On January 20, 2020, Plaintiff followed up with Correia regarding her request for job-protected time off while she recovered from childbirth.  (*Id.* ¶ 38.)  The next day, Correia responded, saying:  "If you are not on an approved FMLA, the hotel can fill the position if the business demands.  In that case you would need to re-apply for an available position upon your return."  (*Id.* ¶ 39.)

Plaintiff understood Correia's January 21 email to be denying her request for job-protected time off as a reasonable accommodation for her recovery from childbirth.  (*Id.* ¶ 40.)  In fact, the next day—on January 22—Plaintiff emailed Masterson, saying:  "Looks like the position can be filled and that I would need to re-apply.  Looks like I'm going to take a short 1–2 week vacation request once I give birth and then come back one day a week just so I can keep my job."  (*Id.*)  Masterson did not respond to Plaintiff, or offer her any accommodation for her upcoming childbirth.  (*Id.* ¶ 41.)

### 4.  Plaintiff's Request for a Reduced Schedule

On March 17, 2020, Defendant laid Plaintiff off in light of the COVID-19 pandemic.  (*Id.* ¶ 44.)  In a conversation that same day, Defendant's corporate representative Steve Brooks told Plaintiff that the layoff was "nothing performance related," noting that she was "responsible" and had "done a lot for the company."  (*Id.* ¶ 45.)  Brooks also emphasized repeatedly to Plaintiff that

she was "being laid off, not terminated, of course not," and informed her, "[y]ou'll be our first phone call" to return to work. (*Id.*) Brooks stated that there was no timeframe during which a layoff would turn into an automatic termination, adding, "[w]e thank you for all that you've done and will do in the future." (*Id.*)

On April 15, 2020, Masterson called Plaintiff to ask about her availability to return to work, and plaintiff expressed that she was eager to return to work. (*Id.* ¶ 46.) Plaintiff also requested a reasonable accommodation related to her pregnancy. (*Id.*) Specifically, Plaintiff expressed concern that, given her rapidly approaching due date, she might go into labor while working alone during a Friday night shift, thereby jeopardizing her health and leaving the Hotels' front desks unstaffed. (*Id.*) She worried about going into labor unexpectedly, particularly in light of the subchorionic hemorrhage she had experienced. (*Id.*) Plaintiff further explained that she was happy to work Saturday morning front desk shifts, during which time there was additional staff on hand. (*Id.*) Plaintiff was also willing to work other available shifts that would not require her to work alone. (*Id.*)

Masterson responded to Plaintiff, telling her that she would let Plaintiff know about her accommodation request, but Masterson never did. (*See id.* ¶ 48.) Instead, around April 16–17, 2020, Defendant recalled two other front desk agents, including one who was a part-time employee. (*Id.* ¶ 49.) Neither of the new agents was pregnant or a new parent, and Plaintiff had worked at Marriott hotels longer than both of them. (*Id.*) Despite this development, however, Plaintiff continued to express to Defendant her strong desire to return to work at the Hotels. (*Id.* ¶ 50.) For instance, around April 17, 2020, Plaintiff sent Masterson a text message to inquire about returning to work, but Masterson replied that the Hotels did not need her. (*Id.* ¶ 51.) Around April 24, 2020, Plaintiff again asked Masterson about returning to work, but Masterson

did not reply.  (*Id.* ¶ 52.)  And around April 29, 2020, Plaintiff called Masterson to ask about returning to work, but Masterson told her, again, that the Hotels did not need her.  (*Id.* ¶ 53.)[2]

On May 13, 2020, Plaintiff gave birth to her child.  (*Id.* ¶ 55.)  As alleged, no other front desk agent at the Hotels was recently postpartum at that time.  (*Id.* ¶ 56.)

### 5. Defendant's Hiring Efforts Following May 2020

On approximately June 8, 2020, Plaintiff emailed Masterson after discovering that she was unable to log in to her Marriott "MGS" account.  (*Id.* ¶ 57.)  Masterson replied that she would have to get approval from the "corporate office" to reactivate the account because Plaintiff was "laid off."  (*Id.*)[3]

On July 16, 2020, Plaintiff again emailed Masterson to reiterate her availability and interest in returning to work, and to inquire when she would be called back.  (*Id.* ¶ 58.) Masterson replied that, "[a]s of right now, the need is not there to bring all the staff back.  Once we have more info, we will update you."  (*Id.*)  However, around that same time, Defendant posted job advertisements seeking to hire front desk agents on multiple job search websites.  (*Id.* ¶ 59.)

Indeed, beginning no later than the summer of 2020, General Manager Czulada began to circulate regular memos to Defendant's employees expressing a need for more front desk agents, and also advertising that Defendant was hiring for other positions Plaintiff had previously performed, such as night auditor.  (*Id.* ¶ 60.)  For example, Czulada circulated a memo entitled

---

[2] Plaintiff asserts that "[e]ach of these failures to recall [her], while recalling other employees, separately and collectively constituted a failure to accommodate [her] pregnancy, discrimination against [her] because of her pregnancy, and retaliation against her for requesting accommodation."  (SAC ¶ 54.)

[3] Plaintiff alleges that, on information and belief, "a part-time, male employee who was also laid off—and who was not pregnant, recently postpartum, or a new parent—did not have his [MGS] account deactivated."  (SAC ¶ 57.)

"Weekly Updates 7/19-25," which stated that Defendant was recalling "1 Desk Agent" and "[i]nterviewing new personnel for the . . . Desk Agent [position]."  (*Id.* ¶ 61.)  A week later, Czulada circulated "Weekly Updates 7/26-8/2," which stated that "Natalia [was] returning as a Front Desk Agent" and also noted that Defendant was "[i]nterviewing new personnel" for the desk agent position, including that the candidate was "going through background checks."  (*Id.* ¶ 62; *see also id.* ¶ 63 (quoting the "Weekly Updates 8/16-22" as stating:  "Last week we brought on 2 new associates," including "Shea Ortiz – Desk Agent," and that Defendant was "[i]nterviewing new personnel" for the desk agent position).)  In additional memos, Defendant indicated that it was "fortunate to hire [two] new desk agents[,]" including one "with previous Marriott and Courtyard experience" and another "with night audit and hotel experience."  (*Id.* ¶ 64; *see also id.* (quoting a "Weekly Updates 8/23-29" memo as stating "Looking to hire [two] additional Desk Agents.  The position was just opened.").)  Finally, a "Weekly Updates 10/11-17" memo stated, "Desk Agent – [one] position left to be filled," and noted, "Oscar started with us on 10/8!  Welcome Oscar!!!  Great to have you with us!"  (*Id.*)

Plaintiff alleges that there was high turnover among front desk agents during this time period, and thus many staff members were recalled or newly hired to work as front desk agents.  (*See id.* ¶ 65.)  However, none of the front desk agents who were recalled or hired to replace Plaintiff was pregnant or recently postpartum.  (*Id.* ¶ 66.)

<u>6. Plaintiff's Equal Employment Opportunity Commission Charge and Termination</u>

On December 15, 2020, Plaintiff submitted an inquiry to the Equal Employment Opportunity Commission ("EEOC"), in which she stated that she had been "laid off" and that her return to work had been "deferred" despite her other colleagues being brought back and new employees hired.  (*Id.* ¶ 67.)  In her inquiry, she did not state, nor did she believe, that her

employment had yet been "terminated." (*Id.*)  Thereafter, on April 20, 2021, Plaintiff filed a

charge pro se with the EEOC. (*Id.* ¶ 68.)  In her EEOC charge, Plaintiff explained that she had

been temporarily laid off as a result of the COVID-19 pandemic and, as of July 16, 2020, not

recalled to work. (*Id.* ¶ 69; *see also* Decl. of Terence P. McCourt, Esq. in Supp of Mot.

("McCourt Decl.") Ex. A ("EEOC Charge") (Dkt. No. 45-1).)[4]  In full, the "particulars" of her

EEOC were as follows:

> I was employed by [Defendant] since November 2019 when [Defendant] purchased
> the Hotel[s] from [a non-party entity].  On January 2020 [sic], I inquired about
> FMLA due to my pregnancy but was not eligible.  I had intentions of returning to
> work immediately after giving birth to keep my position.  Early March 2020, I had
> a meeting with Jamie Masterson and S. Brooks (Corporate) regarding the process
> to lay off employees.  I was [eight] months and visibly pregnant.  On or around

---

[4] Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to
the pleadings themselves," because "[t]o go beyond the allegations in the [c]omplaint would
convert the Rule 12(b)(6) motion to dismiss into one for summary judgment pursuant to [Rule]
56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y.
2002) (citation omitted).  However, "the Court's consideration of documents attached to, or
incorporated by reference in the [c]omplaint, and matters of which judicial notice may be taken,
would not convert the motion to dismiss into one for summary judgment." *Id.* (citations
omitted); *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling
on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety. . . ,
documents incorporated into the complaint by reference") (quotation marks omitted).
"Generally, a court may incorporate documents referenced where (1) [the] plaintiff relies on the
materials in framing the complaint, (2) the complaint clearly and substantially references the
documents, and (3) the document's authenticity or accuracy is undisputed." *Stewart v. Riviana
Foods Inc.*, No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) (emphasis
omitted) (collecting cases); *see also Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL
5730605, at *5 (S.D.N.Y. Sept. 30, 2015) ("To be incorporated by reference, the complaint must
make a clear, definite, and substantial reference to the documents[.]" (alterations omitted)
(quoting *Bill Diodato Photography LLC v. Avon Prods., Inc.*, No. 12-CV-847, 2012 WL
4335164, at *3 (S.D.N.Y. Sept. 21, 2012))).

Here, the SAC clearly refers to and relies upon the EEOC Charge, (*see* SAC ¶¶ 68–69,
109, 114), and Plaintiff cannot reasonably question the accuracy of the document; indeed, she
attached it to her initial Complaint, (*see* Compl. 13–15 (Dkt. No. 1)).  Thus, the Court concludes
that the EEOC Charge is incorporated by reference in the SAC. *See Toulouse v. Vill. Diagnostic
Treatment Ctr.*, No. 15-CV-9387, 2018 WL 4682782, at *2 n.4 (S.D.N.Y. Sept. 28, 2018)
(incorporating an EEOC charge by reference); *Allen v. N.Y.C. Dep't of Env't Prot.*, 51 F. Supp.
3d 504, 510 n.3 (S.D.N.Y. 2014) (same.)

March 26, 2020, I was laid off.  On July 16, 2020, other employees were recalled. However, I was not recalled.

[Defendant] stated that I was not recalled due to the pandemic, COVID-19 and the economic impact in the hotel industry.

I believe that I was discriminated against based on my sex (pregnancy) with respect to lay off and discharged in violation of Title VII of the Civil Rights Act of 1964, as amended.

(EEOC Charge at 2.)

Plaintiff alleges that she did not state or believe that, at the time she filed her EEOC Charge, her employment had been "terminated."  (SAC ¶ 69.)  Rather, Plaintiff asserts that, in June 2021, she learned for the first time—via Defendant's EEOC position statement—that Defendant had terminated her employment and that she was no longer eligible to be recalled from layoff.  (*Id.* ¶ 70.)  As alleged, this discovery contradicted Defendant's earlier statement that she was "being laid off, not terminated" and that she would be "[Defendant's] first phone call" to return to work.  (*Id.*)  Shortly after receiving Defendant's position statement, Plaintiff reached out to the EEOC via email expressing surprise that Defendant's position statement indicated it had terminated her employment and stating her belief that her termination was in retaliation for her filing of the EEOC Charge.  (*Id.* ¶ 71; *see also id* ¶ 72 ("Upon information and belief, Defendant did, in fact, terminate [Plaintiff's] employment because she filed a charge of discrimination against Defendant with the EEOC.").)

B.  Procedural History[5]

With leave of the Court, (*see* Dkt. No. 39), Plaintiff—through counsel—filed the SAC on July 24, 2023, (*see* SAC).[6]  On August 7, 2023, Defendant filed a pre-motion letter seeking leave to file the instant Motion.  (*See* Letter from Nicholas Corsano, Esq. to Court (Aug. 7, 2023) (Dkt. No. 41).)  Plaintiff filed a response on August 14, 2023.  (*See* Letter from Dana Bolger, Esq. to Court (Aug. 14, 2023) (Dkt. No. 42).)  On September 14, 2023, the Court held a pre-motion conference during which it adopted a briefing schedule.  (*See* Dkt. (minute entry for Sept. 14, 2023).)

Pursuant to that briefing schedule, Defendant filed its Motion and accompanying papers on October 13, 2023.  (*See* Not. of Mot.; McCourt Decl. (Dkt. No. 45); Mem. of Law in Supp. of Mot. ("Def's Mem.") (Dkt. No. 46).)  On November 17, 2023, Plaintiff filed her Opposition. (*See* Pl's Mem. of Law in Opp'n to Mot. ("Pl's Opp'n") (Dkt. No. 47).)  Defendant filed its Reply on December 7, 2023.  (*See* Reply Mem. of Law in Supp. of Mot. ("Def's Reply") (Dkt. No. 48).)

After the Motion was fully briefed, on February 8, 2024, Plaintiff filed a letter in further support of her Opposition, which advised the Court of a recent decision from another court in this District.  (*See* Letter from Dana Bolger, Esq. to Court (Feb. 8, 2024) ("Pl's Not. of Supp. Auth.") (Dkt. No. 49).)  After the Court granted it leave to file a substantive response, (*see* Dkt. No. 51), Defendant filed a letter of its own on February 16, 2024, (*see* Letter from Nicholas Corsano, Esq. to Court (Feb. 16, 2024) ("Def's Resp. to Not. of Supp. Auth.") (Dkt. No. 52)).

---

[5] The Court assumes the Parties' familiarity with the procedural history of this case as described in its Opinion & Order on Defendant's prior motion to dismiss, (*see* Op. & Order 5–6 (Dkt. No. 26)), and will therefore recount only the procedural background relevant to the instant Motion.

[6] Plaintiff had initially proceeded pro se in this Action.  (*See* Compl.)

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an adorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

11

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Gamboa v. Regeneron Pharms., Inc.*, — F. Supp. 3d —, 2024 WL 815253, at *3 (S.D.N.Y. Feb. 27, 2024) (same).

B. Analysis

In the SAC, Plaintiff raises six causes of action. (*See* SAC ¶¶ 73–116.) First, Plaintiff asserts that Defendant discriminated against her on the basis of her status as a pregnant woman in violation of Title VII. (*See id.* ¶¶ 73–80.) Second, she contends that Defendant likewise violated the NYSHRL in connection with its discrimination against Plaintiff on that same basis. (*See id.* ¶¶ 81–88.) Third, Plaintiff claims that Defendant subjected her to familial status discrimination in violation of the NYSHRL. (*See id.* ¶¶ 89–96.) Fourth, Plaintiff alleges that Defendant failed to accommodate her pregnancy in violation of the NYSHRL. (*See id.* ¶¶ 97–107.) Fifth, Plaintiff brings a retaliation claim under Title VII, arguing that Defendant "retaliated against [her] by terminating her employment because she filed a complaint charging Defendant with discriminatory practices." (*See id.* ¶¶ 108–11.) And sixth, Plaintiff also brings a retaliation claim pursuant to the NYSHRL on two grounds: (1) that Defendant "retaliated against [her] for

requesting reasonable accommodations each and every time it refused to recall her to work, and replaced her with other new and recalled employees"; and (2) that Defendant "retaliated against [her] by terminating her employment because she filed a complaint charging Defendant with discriminatory practices."  (*Id.* ¶¶ 112–16.)[7]

Through the instant Motion, Defendant seeks the dismissal of Plaintiff's Title VII- and NYSHRL-based retaliation claims only.  (*See generally* Def's Mem.)[8]  Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter[.]"  42 U.S.C. § 2000e-3(a).  In other words, "Title VII forbids an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII[.]"  *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006). Courts analyze claims for retaliation pursuant to Title VII under the familiar framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*[.]"). "Under the first step of the *McDonnell Douglas* framework, the plaintiff must establish a prima

---

[7] Plaintiff has made clear that she "does not allege that her accommodation request (or her opposition to its denial) constituted protected activity for the purposes of her Title VII retaliation claim."  (Pl's Not. of Supp. Auth. 1 n.1 (emphasis omitted).)

[8] The Court notes that Defendant's opening brief is only six pages long and contains no more than a page-and-a-half of legal argument and analysis, including only two citations to (non-binding) cases.  Given that "the *movant* bears the burden of proof on a motion to dismiss under Rule 12(b)(6)[,]" *Pearl River Union Free Sch. Dist. v. Duncan*, 56 F. Supp. 3d 339, 351 (S.D.N.Y. 2014) (emphasis added) (citation omitted); *see also Farrell* v. *City of New York*, No. 23-CV-4329, 2024 WL 3849333, at *7 (S.D.N.Y. Aug. 16, 2024) (same), the Court is surprised that Defendant was under the impression that such threadbare briefing would be sufficient to carry that burden.

facie case of retaliation[.]" *Id*. at 844 (citation omitted). Once the plaintiff has done so, "the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Id*. at 845 (citation omitted). "The employee at all times bears the burden of persuasion to show retaliatory motive." *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014) (citation omitted). "As with other claims analyzed under the *McDonnell Douglas* framework, the allegations [in the operative complaint] need only give plausible support to the reduced prima facie requirements." *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *20 (E.D.N.Y. Sept. 21, 2015), (alterations adopted) (quotation marks, and citation omitted). Notably, retaliation claims under the NYSHRL and Title VII are subject to the same standard. *See Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 343–44 (S.D.N.Y. 2017) (treating retaliation claims under Title VII and the NYSHRL under the same standard). The Court therefore evaluates the substance of each of Plaintiff's retaliation claims— under both Title VII and the NYSHRL—in tandem.

To plausibly plead a prima facie case of retaliation, a plaintiff must establish that: "(1) she was engaged in protected activity, (2) the alleged retaliator knew that plaintiff was involved in protected activity, (3) an adverse decision or course of action was taken against plaintiff and (4) a causal connection exists between the protected activity and the adverse action." *Atherley v. N.Y.C. Dep't of Educ.*, No. 23-CV-383, 2024 WL 1345741, at *11 (S.D.N.Y. Mar. 29, 2024) (quotation marks and citation omitted); *see also Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (same). Accordingly, "for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 90 (2d Cir.

14

2015) (citation omitted); *see also Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 571–72 (S.D.N.Y. 2023) (same). Crucially, "[a] plaintiff's burden at this prima facie stage is de minimis." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (italics omitted); *see also Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 459 (S.D.N.Y. 2023).

With respect to both retaliation claims—which allege that Defendant retaliated against Plaintiff for filing the EEOC Charge—Defendant asserts that "Plaintiff cannot establish the requisite causal nexus between that protected activity and her termination which occurred prior to the filing of the [EEOC] Charge and which, in fact, was the subject of the Charge." (Def's Mem. 8.)[9] As to Plaintiff's retaliation claim under the NYSHRL, Defendant argues that, as a matter of law, requesting a reasonable accommodation is not a protected activity. (*See id.* at 8–9.)

### 1. Protected Activity

The Court first considers the viability of Plaintiff's asserted protected activities. "The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)); *see also Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) ("[R]etaliation is unlawful when the retaliatory acts were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." (citation and quotation marks omitted)). Accordingly, "an action need not affect

---

[9] For purposes of its Motion, Defendant appears to concede that Plaintiff's termination constitutes an adverse employment action for purposes of her retaliation claims. (*See generally* Def's Mem.; Def's Reply.)

the terms and conditions of a plaintiff's employment for purposes of a retaliation claim."

*Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 n.6 (2d Cir. 2010).

### a.  EEOC Charge

In connection with her retaliation claims under both Title VII and the NYSHRL, Plaintiff alleges that she engaged in protected activity when she submitted her EEOC Charge.  (*See* SAC ¶¶ 109, 114.)  Although Defendant does not appear to challenge that Plaintiff's act of filing her EEOC Charge constitutes protected activity, (*see generally* Def's Mem.), the Court notes that "[t]he caselaw is clear that plaintiffs engage in protected activity when they file . . . external discrimination complaints against their employer[,]" *Lopez v. White Plains Hosp.*, No. 19-CV-6263, 2022 WL 1004188, at *13 (S.D.N.Y. Mar. 30, 2022) (collecting cases); *Atherley*, 2024 WL 1345741, at *12 (concluding that the "[p]laintiff's filing of an EEOC [c]harge . . . constitute[d] protected activity because she alleged that Defendants employment practices violated Title VII[] . . . [and] the NYSHRL"); *see also Sullivan v. Creedmoor Psychiatric Ctr.*, No. 22-CV-3420, 2023 WL 6390165, at *7 (E.D.N.Y. Sept. 30, 2023) (finding that the "plaintiff's EEOC charge constitute[d] protected activity under Title VII").  There is no dispute that Plaintiff filed a Charge with the EEOC, alleging that Defendant discriminated against her on the basis of her status as a pregnant woman.  (*See* EEOC Charge at 2; *see also* SAC ¶¶ 68–69.)  Thus, as it relates to Plaintiff's retaliation claims under both Title VII and the NYSHRL, the Court concludes that Plaintiff has plausibly alleged that she engaged in protected activity when she filed her EEOC Charge.

### b.  Reasonable Accommodation Requests

With regard to her NYSHRL-based retaliation claim only, Plaintiff contends that she engaged in protected activity by requesting reasonable accommodations on account of her pregnancy.  (*See* SAC ¶ 113; *see also* Pl's Not. of Supp. Auth. 1 n.1 (making clear that this

alleged protected activity is *not* asserted in connection with Plaintiff's Title VII claim).)
Defendant contends that requesting a reasonable accommodation in this context cannot amount
to protected activity for purposes of the NYSHRL as a matter of law.  (*See* Def's Mem. 8.)  In
light of binding caselaw from New York's intermediate appellate courts, the Court agrees with
Defendant.

As a general matter, "[w]hen deciding a question of state law," federal courts "look to the
state's decisional law, as well as to its constitution and statutes."  *Chen v. Dunkin' Brands, Inc.*,
954 F.3d 492, 497 (2d Cir. 2020) (internal quotation marks and citation omitted).  Absent a clear
directive from a state's highest court, a federal court must "predict how the state's highest court
would resolve the uncertainty or ambiguity."  *Id.* at 499 (internal quotation marks and citation
omitted).  In doing so, the federal court "is bound to apply the law as interpreted by a state's
intermediate appellate courts unless there is persuasive evidence that the state's highest court
would reach a different conclusion."  *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010); *see
also Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 221 (2d Cir.
2003) (same); *Barnes v. Uzu*, No. 20-CV-5885, 2022 WL 784036, at *9 (S.D.N.Y. Mar. 15,
2022) (same).

New York's intermediate appellate courts have long made clear that "[u]nder [the
NYSHRL], a request for reasonable accommodation is not a protected activity for purposes of a
retaliation claim."  *Witchard v. Montefiore Med. Ctr.*, 960 N.Y.S.2d 402, 403–04 (App. Div.
2013) (citing *McKenzie v. Meridian Cap. Grp., LLC*, 829 N.Y.S.2d 129, 131 (App. Div. 2006));
*accord* 18 N.Y. Jur. 2d Civil Rights § 121 (same); *see also D'Amico v. City of New York*, 159
A.D.3d 558, 558, 73 N.Y.S.3d 540, 541 (App. Div. 2018) (holding that the "plaintiff's request
for a reasonable accommodation . . . [does not] constitute[] protected activit[y] for purposes of

17

the [NYSHRL]"); *cf. Serdans v. N.Y. & Presbyterian Hosp.*, 977 N.Y.S.2d 196, 198 (App. Div. 2013) ("[The p]laintiff's complaint about [the] defendant's alleged failure to implement the parties' agreement to accommodate her disability (*as distinct from her initial request for an accommodation*) does constitute a protected activity for purposes of her [NYSHRL] claim[] of retaliation." (emphasis added)).  And federal courts analyzing claims under the NYSHRL, have followed this line of cases *See, e.g.*, *Marshall v. Westchester Med. Ctr. Health Network*, No. 22-CV-7990, 2024 WL 665200, at *14 (S.D.N.Y. Feb. 16, 2024) ("'[A] request for reasonable accommodation is not a protected activity for purposes of a retaliation claim' under the NYSHRL." (quoting *Mejia v. City of New York*, No. 17-CV-2696, 2020 WL 2837008, at *13 (E.D.N.Y. May 30, 2020)); *Taulbee v. D'Youville Coll.*, No. 21-CV-228, 2022 WL 363338, at *2 (W.D.N.Y. Jan. 11, 2022) (noting that "New York law does not recognize" NYSHRL retaliation claims based on a request for a reasonable accommodation); *Dipinto v. Westchester County*, No. 18-CV-793, 2020 WL 6135902, at *7 (S.D.N.Y. Oct. 19, 2020) (explaining that "requesting a reasonable accommodation [does not] constitute [a] protected activit[y] under the NYSHRL[,]" and collecting cases); *Piligian v. Ichan Sch. of Med. at Mount Sinai*, No. 17-CV-1975, 2020 WL 6561663, at *11 (S.D.N.Y. Apr. 7, 2020) (stating that "requests for accommodation in the first instance[] . . . do not constitute protected activity" for purposes of NYSHRL retaliation claims), *report and recommendation adopted sub nom. Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707 (S.D.N.Y. 2020).[10]

---

[10] Plaintiff attempts to distinguish these cases as pre-dating a 2019 amendment to the NYSHRL, which—she argues—was "enacted in response to overly-cramped judicial interpretations of the statute."  (Pl's Opp'n 13.)  Although she leans heavily on the notion that the NYSHRL should be construed liberally under the 2019 amendment, she fails to grapple with the fact that the prior iteration of the NYSHRL was likewise meant to be "construed liberally." N.Y. Exec. Law § 300 (2000).  More generally, Plaintiff relies upon the New York State Pregnant Workers Fairness Act provisions of the NYSHRL, but she does not bother to cite that

The rationale for this rule stems from the plain language of the NYSHRL itself, which provides that, "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."  N.Y. Exec. Law § 296(7); *see also id.* § 296(1)(e) ("It shall be an unlawful discriminatory practice: . . . For any employer, . . . to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.").  Importantly, under New York law, "[w]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning." *Anonymous v. Molik*, 109 N.E.3d 563, 568 (N.Y. 2018) (quoting S*tate of New York v. Patricia II*, 844 N.E.2d 743, 745 (N.Y. 2006)); *see also id.* ("The literal language of a statute is generally controlling unless the plain intent and purpose of a statute would otherwise be defeated." (quotation marks and citation omitted)).  The meaning of the NYSHRL is clear. Given that a request for a reasonable accommodation itself is neither an opposition to a forbidden practice, nor a complaint in furtherance of a proceeding under the NYSHRL, *see* N.Y. Exec. Law § 296(7); *see also id.* § 296(1)(e), "courts have distinguished between requests for accommodation in the first instance, which[, again,] do not constitute protected activity, and *complaints about or opposition to the denial of such requests*, which may constitute protected activity[,]" *Piligian*, 2020 WL 6561663, at *11 (emphasis added); *see also McKenzie*, 829 N.Y.S.2d at 131 (holding that the plaintiff failed to state a NYSHRL retaliation claim because

---

Act or any of its implementing provisions, nor does she specifically explain how that Act changed the NYSHRL.  (*See generally* Pl's Opp'n.)

"she did not allege that her request [for a reasonable accommodation] was made *in opposition to* a practice forbidden by the [NYSHRL]"); *cf. Brook v. Overseas Media, Inc.*, 893 N.Y.S.2d 37, 38–39 (App. Div. 2010) (explaining, in the context of a retaliation claim under the New York City Human Rights Law, that the plaintiff's complaint did not "state a cause of action because it fails to allege that she *opposed* her employer's discriminatory failure to make reasonable accommodation" (emphasis added)).

In light of the foregoing caselaw—and given that Plaintiff does not allege that she submitted her requests for reasonable accommodation "in opposition to a practice forbidden by the [NYSHRL,]" *McKenzie*, 829 N.Y.S.2d at 131—the Court concludes that Plaintiff cannot rely on her requests for reasonable accommodations as protected activity in connection with her NYSHRL retaliation claim, unless she points to "persuasive evidence that the [New York Court of Appeals] would" disagree with the assorted Appellate Division decisions cited above, *V.S.*, 595 F.3d at 432. Although Plaintiff's arguments in her Opposition are not without some force, the Court finds that they are ultimately unavailing. (*See* Pl's Opp'n 10–14.)

First, Plaintiff contends that "the Second Circuit recently *accepted* a reasonable accommodation request as protected activity under the NYSHRL." (*Id.* at 10–11 (emphasis in original) (citing *Tafolla*, 80 F.4th at 125–27).) In *Tafolla*, the plaintiff brought claims under the Americans with Disabilities Act ("ADA") and the NYSHRL, alleging inter alia, that the defendants "retaliated against her for making [a] accommodation request by forcing her to go on medical leave, which ultimately led to her termination." 80 F.4th at 115. As Plaintiff here states, the Second Circuit did note that "[t]he alleged retaliatory conduct [in that case] was in close temporal proximity to the [plaintiff's] requests for an accommodation." *Id.* at 126; *see also id.* ("The close temporal proximity between [the plaintiff's] requests for the accommodation and the

instruction that she would need to go on medical leave is sufficient to support an inference of retaliation.")  However, a close review of the *Tafolla* decision reveals that the question of whether a request for a reasonable accommodation can constitute protected activity for purposes of an *NYSHRL* retaliation claim was not before the court, and the panel offered no opinion on that point.  *See id.* at 125–27.  It also bears noting that, in the ADA context, requests for reasonable accommodations *can* constitute protected activity.  *See Arkorful v. N.Y.C. Dep't of Educ.*, — F. Supp. 3d —, 2024 WL 298999, at *15 (E.D.N.Y. Jan. 24, 2024) (explaining that "seeking reasonable accommodation for a disability can constitute protected activity under the ADA" (citing *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002))); *see also Bernheim v. N.Y.C. Dep't of Educ.*, No. 19-CV-9723, 2021 WL 2619706, at *11 (S.D.N.Y. June 25, 2021) ("Protected activities [in the ADA context] include requests for reasonable accommodations." (citation omitted)), *report and recommendation adopted*, 2021 WL 4198126 (S.D.N.Y. Sept. 15, 2021).  In the instant case, of course, Plaintiff has not asserted an ADA claim.  (*See generally* SAC.)  Thus, the Court concludes that *Tafolla* did not, sub silentio, question the holdings in, inter alia, *D'Amico*, *Witchard*, and *McKenzie*, and therefore does not abrogate the principle that, under the NYSHRL, requests for reasonable accommodation cannot constitute protected activity.

Second, Plaintiff relies upon several federal district court decisions where the courts concluded that "requesting a reasonable accommodation for a pregnancy-related need is a protected activity."  (Pl's Opp'n 11; Pl's Not. of Supp. Auth. 1.)  However, this Court is not convinced by the reasoning—such as it was—in the decisions Plaintiff cites.  To be sure, those cases do clearly hold that a pregnant plaintiff's request for a reasonable accommodation is a protected activity for purposes of their NYSHRL retaliation claims.  *See Bethea v. Winfield Sec.*

*Corp.*, No. 23-CV-922, 2023 WL 8650004, at *5 (S.D.N.Y. Dec. 14, 2023) (stating—in connection with analyzing the plaintiff's Title VII and NYSHRL retaliation claims—that "[a] pregnant employee's request for a reasonable accommodation can constitute a protected activity" and finding that the plaintiff's accommodation request was "plausibly [pleaded] to have been a request to accommodate conditions caused by her pregnancy" (citation omitted)), *reconsideration granted on other grounds*, 2024 WL 2783753 (S.D.N.Y. May 29, 2024); *Brown v. Metro. Dental Assocs.*, No. 21-CV-851, 2023 WL 5154415, at *9 (S.D.N.Y. Aug. 10, 2023) (noting, in the context of discussing the plaintiff's Title VII and NYSHRL retaliation claims, that "requesting reasonable accommodations for pregnancy" was "certainly" a protected activity); *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 331–32 (S.D.N.Y. 2020) (explaining, in connection with assessing the plaintiff's Title VII and NYSHRL retaliation claims, that protected activity "may [] include requests for reasonable accommodation" and concluding that the plaintiff's alleged accommodation request, which related to her pregnancy, amounted to protected activity).

Notwithstanding the clear language in those decisions, this Court emphasizes at the outset that the defendants in those cases do not appear to have raised the issue of whether requests for reasonable accommodations may amount to protected activity for purposes of retaliation claims under the NYSHRL. *Bethea*, 2023 WL 8650004, at *5–6; *Brown*, 2023 WL 5154415, at *9–10; *Farmer*, 473 F. Supp. 3d at 331–32. Further, and crucially, *Bethea*, *Brown*, and *Farmer* collectively rely upon two other district court decisions—*Jenkins v. New York City Transit Authority*, 646 F. Supp. 2d 464 (S.D.N.Y. 2009), and *Gratton v. Jetblue Airways*, No. 04-CV-7561, 2005 WL 1251786 (S.D.N.Y. May 25, 2005)—to support the notion that requesting a pregnancy-related reasonable accommodation amounts to protected activity for NYSHRL

22

purposes. *See Bethea*, 2023 WL 8650004, at *5 (citing *Gratton* and *Farmer*); *Brown*, 2023 WL 5154415, at *9–10 (citing *Jenkins*); *Farmer*, 473 F. Supp. 3d at 331–32 (citing *Gratton* and *Jenkins*). Neither *Gratton* nor *Jenkins*, however, supports the conclusions of the courts in *Bethea*, *Brown*, and *Farmer* as to the NYSHRL retaliation claims before them. Starting with *Gratton*, that case involved a retaliation under *Title VII*, not the NYSHRL. *See* 2005 WL 1251786, at *10. And, more importantly, although the court noted that the defendant was "incorrect" insofar as it argued that "requests for accommodation of one's pregnancy do[es] not constitute [a] protected activit[y[ as defined by Title VII[,]" it did not explain why. *Id.* Turning to *Jenkins*—a case concerning allegations of *religious* discrimination—while that case involved NYSHRL claims, it did *not* involve an NYSHRL *retaliation* claim. *See* 646 F. Supp. 2d at 466–67, 471–73. Thus, in the relevant section, the court was only considering a retaliation claim arising under Title VII. *See id.* at 471–73. In that context, the court did state that "a claim for retaliation can be based upon a request for reasonable accommodation[,]" but in doing so it relied on *Gratton* and *Weixel*, 287 F.3d at 149. And, as noted, *Gratton* says nothing about NYSHRL-based retaliation claims. *See* 2005 WL 1251786, at *10. For its part, *Weixel* held that requests for reasonable accommodation can constitute protected activity in the *ADA context*. *See* 287 F.3d at 149. Accordingly, in light of the consistent decisions from New York's intermediate appellate courts, the Court is not convinced that it can simply follow the decisions in *Bethea*, *Brown*, and *Farmer*.

Third, Plaintiff relies upon guidance from the New York State Division of Human Rights ("DHR"), which states—without citation—that "[i]t is unlawful for any employer[] . . . to retaliate against an employee . . . who has sought and/or been granted a reasonable accommodation for a pregnancy-related condition." N.Y. Div. Human Rights, Guidance on

Pregnancy Discrimination and Reasonable Accommodation of Pregnancy-Related Conditions for

Employers in New York State 3 (2015), *available at*

https://dhr.ny.gov/system/files/documents/2022/08/nysdhr-guidance-pregnancy-

discrimination.pdf; *see also id.* ("The [NYSHRL] protects any individual who has engaged in

'protected activity.'  Protected activity occurs when a person has . . . requested a reasonable

accommodation[.]").[11]  However, DHR's guidance does not engage in any way with the holdings

in *D'Amico*, *Witchard*, and *McKenzie*.  *See id.*  In addition, to the extent the DHR guidance

purports to reinterpret the NYSHRL in the pregnancy context, the Court highlights that—under

New York law—where a court is confronted with "an issue of pure statutory interpretation,"

such as the meaning of the NYSHRL, it "need not accord any deference to the agency's

determination."  *Walsh v. N.Y. State Comptroller*, 144 N.E.3d 953, 955 (N.Y. 2019) (quoting

*Matter of DeVera*, 117 N.E.3d 757, 763 (N.Y. 2018)); *see also Town of Southampton v. N.Y.*

*State Dep't of Env't Conservation*, 205 N.E.3d 426, 431 (N.Y. 2023) (same).  Thus, DHR's

guidance does nothing to affect the Court's analysis here.

　　　　In sum, Plaintiff has not convinced the Court that the New York Court of Appeals "would

reach a different conclusion" from the courts in *D'Amico*, *Witchard*, and *McKenzie*.  *V.S.*, 595

F.3d at 432.  Accordingly, Defendant's Motion is granted as to Plaintiff's NYSHRL retaliation

claim insofar as that claim relied on her requests for reasonable accommodations alone as her

requisite protected activity.

---

[11] "When considering a motion made pursuant to Rule 12(b)(6), the Court may take
judicial notice of 'documents retrieved from official government websites' . . . ."  *Jones v.
Cuomo*, 542 F. Supp. 3d 207, 211 n.1 (S.D.N.Y. 2021) (quoting *Wells Fargo Bank, N.A. v.
Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015)); *see also, e.g., J.T. v. de
Blasio*, 500 F. Supp. 3d 137, 149 (S.D.N.Y. 2020) (taking judicial notice of documents "that
were published on an official government [website]"); *Williams v. PMA Cos.*, 419 F. Supp. 3d
471, 484 (N.D.N.Y. 2019) (same).

c.  Opposition to the Denial of a Reasonable Accommodation Request

In her Opposition, Plaintiff argues that she has plausibly alleged that she "engaged in protected activity when she 'opposed' a practice forbidden under the NYSHRL (the unlawful denial of a reasonable accommodation) by criticizing [Defendant's] refusal to provide her job-protected time off to recover from childbirth."  (Pl's Opp'n 14–15.)

As noted above, "complaints about or opposition to the denial of [] requests [for reasonable accommodation]" can amount to protected activity for purposes of the NYSHRL. *Piligian*, 2020 WL 6561663, at *11; *see also* N.Y. Exec. Law § 296(7) ("It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has *opposed any practices forbidden under this article* . . . .); *id.* § 296(1)(e) (similar); *Serdans*, 977 N.Y.S.2d at 198 (concluding that the plaintiff's "complaint about [the] defendant's alleged failure to implement the parties' agreement to accommodate her disability . . . [did] constitute a protected activity for purposes of her [NYSHRL] claim[] of retaliation").  Put another way, even "informal protests of discriminatory employment practices, including making complaints to management" can constitute protected activity.  *Schaper v. Bronx Leb. Hosp. Ctr.*, 408 F. Supp. 3d 379, 391 (S.D.N.Y. 2019) (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).  "[T]he content of the communication is the primary consideration, as an employee's communication to management qualifies as a protected activity only where the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law."  *Williams v. Westchester Med. Ctr. Health Network*, No. 21-CV-3746, 2022 WL 4485298, at *15 (S.D.N.Y. Sept. 27, 2022) (quotation marks omitted).

Plaintiff asserts that, on January 22, 2020, she opposed Defendant's denial of her request for job-protected time off to recover from childbirth as a reasonable accommodation related to

her pregnancy. (*See* Pl's Opp'n 14 (discussing SAC ¶¶ 30–40).) For context, Plaintiff emailed

Correia on January 10, 2020, informing her that she was pregnant, requesting job-protected time

off to recover from childbirth, and stating "I do want to make sure that my job/position will be

held for me because I do plan to come back to work." (SAC ¶¶ 30–31.) On January 13, 2020,

Correia responded, telling Plaintiff that she was ineligible for leave under the FMLA. (*Id.* ¶ 34.)

Plaintiff replied that same day, indicating that she was not seeking FMLA leave and requesting

that Defendant allow her to return to her position after her requested job-protected time off to

recover from childbirth. (*Id.* ¶ 35.) Correia did not respond immediately, so Plaintiff emailed

her direct supervisor, Masterson, on January 17, 2020, asking for help getting the answer to her

inquiry to Correia. (*Id.* ¶¶ 36–37.) Then, on January 20, 2020, Plaintiff followed up with

Correia regarding her request, and the next day Correia responded, stating:  "If you are not on an

approved FMLA, the hotel can fill the position if the business demands.  In that case you would

need to re-apply for an available position upon your return." (*Id.* ¶¶ 38–39.) As alleged,

Plaintiff understood Correia's email to be denying her request for job-protected time off as a

reasonable accommodation for her recovery from childbirth, so she emailed Masterson on

January 22, 2020, saying:  "Looks like the position can be filled and that I would need to re-

apply.  Looks like I'm going to take a short 1–2 week vacation request once I give birth and then

come back one day a week just so I can keep my job." (*Id.* ¶ 40.)

Even when viewing the facts in the light most favorable to Plaintiff—and after drawing

all reasonable inferences in her favor—the Court cannot conclude that her January 22, 2020

email amounted to protected activity.  For a complaint to constitute a protected activity, "a

plaintiff must [make the complaint] in 'sufficiently specific terms so that the employer is put on

notice that the plaintiff believes he or she is being discriminated against on the basis of race,

gender, or national origin.'" *Harris v. Off. of N.Y. State Comptroller*, No. 20-CV-8827, 2022

WL 814289, at *17 (S.D.N.Y. Mar. 17, 2022) (quoting *Ellis v. Century 21 Dep't Stores*, 975 F.

Supp. 2d 244, 280–81 (E.D.N.Y. 2013)).  "In other words, 'ambiguous complaints that do not

make the employer aware of alleged *discriminatory* misconduct do not constitute protected

activity.'" *Williams*, 2022 WL 4485298, at *15 (emphasis in original) (quoting *Int'l Healthcare*

*Exch., Inc v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007)); *accord*

*Gonzalez v. EVG, Inc.*, 999 N.Y.S.2d 16, 17 (App. Div. 2014) (reversing the trial court and

holding that the plaintiff's NYSHRL retaliation claim "must be dismissed" because "[h]er email

to [the] defendants' corporate superior consisted of complaints about generalized harassment and

was too ambiguous to constitute protected activity"); *see also Lent v. City of New York*, 175

N.Y.S.3d 525, 526 (App. Div. 2022) (affirming the trial court and concluding that the plaintiff

"failed to state a claim for retaliation, as his general complaints of mistreatment and harassment

did not convey that he had complained of unlawful discrimination"), *leave to appeal dismissed*,

208 N.E.3d 747 (N.Y. 2023); *Miller v. Nat'l Prop. Mgmt. Assocs., Inc.*, 142 N.Y.S.3d 256, 258

(App. Div. 2021) (holding that, as a matter of law, sending a letter was not protected activity

where "the letter did not suggest, much less allege, that anyone had engaged in 'unlawful

discrimination,' i.e., conduct prohibited by the [NYS]HRL").

    In full, Plaintiff's January 22, 2020 email reads:  "Looks like [my] position can be filled

and that I would need to re-apply.  Looks like I'm going to take a short 1–2 week vacation

request once I give birth and then come back one day a week just so I can keep my job."  (SAC

¶ 40.)  The Court concludes that this email is, at most, an "ambiguous" complaint because it does

nothing to "make [Defendant] aware of alleged *discriminatory* misconduct."  *Williams*, 2022 WL

4485298, at *15 (emphasis in original) (citation omitted).  Stated differently, although it may

express Plaintiff's disappointment, it does "not convey that [s]he had complained of unlawful

discrimination." *Lent*, 175 N.Y.S.3d at 526. So, while "there are no magic words that must be

used" in an internal complaint, *Ramos v. City of New York*, No. 96-CV-3787, 1997 WL 410493,

at *3 (S.D.N.Y. July 22, 1997), "[t]he onus is on the speaker to clarify to the employer that [s]he

is complaining of unfair treatment due to [her] membership in a protected class and that [s]he is

not complaining merely of unfair treatment generally," *Aspilaire v. Wyeth Pharms., Inc.*, 612 F.

Supp. 2d 289, 308–09 (S.D.N.Y. 2009) (citation omitted). Absent such allegations, the Court

cannot conclude that Plaintiff's January 22, 2020 email amounted to protected activity for

purposes of her NYSHRL retaliation claim. *See Harris*, 2022 WL 814289, at *17 (dismissing a

claim of retaliation where the plaintiff "failed to allege that he engaged in protected activity"

because he "[did] not allege that he ever explicitly raised the issue of gender discrimination when

he complained"); *Ramirez v. Temin & Co., Inc.*, No. 20-CV-6258, 2021 WL 4392303, at *15

(S.D.N.Y. Sept. 24, 2021) (dismissing retaliation claims where the plaintiff failed to allege

discriminatory treatment with respect to her complaint to management because the complaint

alleged was "not sufficiently specific to constitute a protected activity"); *Cardwell v. Davis Polk

& Wardwell LLP*, No. 19-CV-10256, 2021 WL 4434935, at *30 (S.D.N.Y. Sept. 23, 2021)

(concluding, on a motion to dismiss, an alleged informal complaint made via email to be "an

ambiguous complaint that does not qualify as protected activity because it was not sufficiently

pointed to put any [d]efendant on notice that [the plaintiff] was complaining about discrimination

under federal, state, or city law").[12]

---

[12] Plaintiff's reliance on the New York Court of Appeal's decision in *Albunio v. City of New York*, (*See* Pl's Opp'n 15,) is misplaced, as that case concerned a retaliation claim under the New York *City* Human Rights Law ("NYCHRL"), not the NYSHRL, *see generally* 947 N.E.2d 135 (N.Y. 2011). Thus, the analysis in *Albunio* is inapposite, because the retaliation standard under the NYCHRL "is in part more permissive than" the standard under the NYSHRL.

Accordingly, Defendant's Motion is granted as to Plaintiff's NYSHRL retaliation claim to the extent that Plaintiff alleges her protected activity was her purported "objection" to Defendant's denial of her request for a reasonable accommodation via her January 22, 2020 email.

### 2. Causal Connection

Having determined that Plaintiff plausibly alleged that she engaged in protected activity when she filed her EEOC Charge, the Court turns to the issue of causation. "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). Further, "[t]o establish the causal connection, [a p]laintiff must plausibly allege that retaliation was a but-for cause of the employer's adverse action." *Crosby*, 695 F. Supp. 3d at 572 (quotation marks omitted); *see also Vega*, 801 F.3d at 90 (same). "As the Supreme Court [has] made clear . . . there can be more than one 'but-for' cause of an adverse employment action." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (citing *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020) (observing that the but-for test is a "sweeping standard" and that "[o]ften, events have multiple but-for causes")).

"[The Second Circuit has long] held that a close temporal relationship between a plaintiff's participation in protected activity and [a defendant's] adverse actions can be sufficient

---

*Farmer*, 473 F. Supp. 3d at 334 (citing *Deveaux v. Skechers USA, Inc.*, No. 19-CV-9734, 2020 WL 1812741, at *6–7 (S.D.N.Y. Apr. 9, 2020)).

to establish causation." *Treglia*, 313 F.3d at 720 (citation omitted); *see also Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (citation and quotation marks omitted)); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (holding that "less than two months" between protected activity and allegedly adverse action were sufficient to establish causation). A plaintiff's "presentation of a temporal connection" can be "enough, in and of itself . . . to permit a reasonable jury to find causation." *Summa v. Hofstra Univ.*, 708 F.3d 115, 127 (2d Cir. 2013). Although the Second Circuit has not established a "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," a court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases," *id.* at 128 (citation and quotation marks omitted); a lengthy gap between the alleged protected activity and alleged adverse employment action can "suggest[], by itself, no causality at all," *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001).

As alleged in the SAC, Plaintiff was initially laid off in March 2020 in light of the COVID-19 pandemic, but—at that time—Brooks told her that she would not be terminated and also that she would be among the first employees to return to work. (SAC ¶¶ 44–45.) As explained in the Court's prior Opinion & Order, (*see* Op. & Order 9), drawing all reasonable inferences in Plaintiff's favor, Plaintiff was therefore placed on an unpaid furlough, as were many workers during the early days of the COVID-19 pandemic, *see, e.g.*, *Arazi v. Cohen Bros. Realty Corp.*, No. 20-CV-8837, 2022 WL 912940, at *4 (S.D.N.Y. Mar. 28, 2022) (noting

defendants in an employment discrimination action furloughed two employees on March 19, 2020); *D'Anzieri v. Harrison Glob. LLC*, No. 21-CV-8506, 2022 WL 17404254, at *2 (S.D.N.Y. Dec. 2, 2022) (explaining that defendants in employment discrimination action had furloughed plaintiff in March 2020 and later terminated her).

On December 15, 2020, Plaintiff submitted an inquiry with the EEOC, stating that her return to work had continued to be "deferred" despite her other colleagues being brought back and new employees being hired by Defendant in the preceding months. (*See* SAC ¶ 67.) In that EEOC inquiry, Plaintiff did not state, nor did she believe at that time, that her employment had yet been terminated. (*Id.*) Then, on April 20, 2021, Plaintiff filed her EEOC Charge, alleging that she had been temporarily laid off but never recalled, and that Defendant's decision not to recall her was evidence of its discrimination against her on the basis of her status as a pregnant woman. (*See id.* ¶ 69.) At the time she filed her EEOC Charge, Plaintiff alleges that she still had not been terminated. (*See id.*) In June 2021, Defendant filed an EEOC position statement in which it indicated to Plaintiff—for the first time—that Defendant had terminated her employment and that she was no longer eligible to be recalled from her furlough. (*Id.* ¶ 70.) Plaintiff asserts that Defendant terminated her employment because she filed her EEOC Charge alleging that it discriminated against her. (*Id.* ¶ 72.)

Given that the Court is bound to accept Plaintiff's factual allegations as true and to draw all reasonable inferences in her favor at this juncture, the Court concludes that these allegations sufficiently allege a causal connection between Plaintiff's filing of her EEOC Charge and the Defendant's notice of her termination just two months later in June 2021. (*See id.* ¶¶ 67–72.) Indeed, courts in this District and other district courts in the Second Circuit have consistently allowed retaliation claims with gaps of two months between the alleged protected activity and

adverse employment action to survive defendants' motions to dismiss. *See, e.g.*, *Nezaj v. PS450 Bar and Rest.*, No. 22-CV-8494, 2024 WL 815996, at \*12 (S.D.N.Y. Feb. 27, 2024) (denying an individual defendant's motion to dismiss as to the plaintiff's NYSHRL retaliation claims where the complaint alleged that that defendant "began reducing her work responsibilities almost immediately after her complaint about [another defendant] and that her termination came only about two months later"); *Ulrich v. Soft Drink, Brewery Workers & Delivery Emps., Indus. Emps., Warehousemen, Helpers & Miscellaneous Workers, Greater N.Y. & Vicinity, Loc. Union No. 812*, 425 F. Supp. 3d 234, 241 (S.D.N.Y. 2019) (slightly over two-month gap between protected activity and adverse employment action sufficient to give rise to causal connection between the two); *Schaper*, 408 F. Supp. 3d at 393 (approximately two-month gap between protected activity and retaliatory act supported inference of causal connection); *Wallace v. Esper*, No. 18-CV-6525, 2019 WL 4805813, at \*9 (S.D.N.Y. Sept. 30, 2019) (denying the defendant's motion to dismiss as to a retaliation claim pertaining to acts of retaliation that occurred two and three months after the plaintiff engaged in protected activity); *Murray v. Dutchess Cnty. Exec. Branch*, No. 17-CV-9121, 2019 WL 4688602, at \*13 (S.D.N.Y. Sept. 25, 2019) (holding that the plaintiff's allegation of a two-to-three-month gap between "engaging in protected activity" and employment termination was "sufficiently narrow, at the motion-to-dismiss stage, to satisfy the requisite causal connection" (collecting cases)); *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, No. 18-CV-0494, 2019 WL 4039149, at \*13 (S.D.N.Y. Aug. 27, 2019) (finding that a gap of eight months between the alleged protected activity and alleged retaliatory conduct may be sufficient to allow an inference of causation); *Dawson v. City of New York*, No. 09-CV-5348, 2013 WL 4504620, at \*18 (S.D.N.Y. Aug. 19, 2013) (noting that "[w]hile the Second Circuit has not established a 'bright line rule' with respect to the limits of temporal proximity, three months

falls within the time period sufficient to permit an inference of retaliation"). Thus, the SAC sufficiently alleges a causal connection based on temporal proximity.

In support of its Motion, Defendant relies heavily on the fact that this Court decided in its prior Opinion & Order that Plaintiff could not "plausibly allege that she was terminated for filing the EEOC [C]harge because, as she alleged in the [C]harge itself, she had already been terminated when she filed." (Op. & Order 18; *see also* Def's Mem. 8; Def's Reply 12–13.) In doing so, however, Defendant ignores the additional facts alleged in the SAC that are set forth above. Indeed, these additional facts should come as no surprise to Defendant, given that the Court granted Plaintiff leave to amend her initial Complaint in its prior Opinion & Order so that she could include allegations that would render her claims plausible. (*See* Op. & Order 19.)[13]

Beyond that, Defendant relies on the language in the EEOC Charge itself, in which Plaintiff—while proceeding pro se—stated: "I believe that I was discriminated against based on my sex (pregnancy) with respect to lay off and *discharged in violation of Title VII* . . . ." (EEOC Charge 2 (emphasis added); *see also* SAC ¶ 68.) As an initial matter, the Court is not inclined to hold potentially inartful or inaccurate language against Plaintiff, particularly when it was submitted by Plaintiff while she was proceeding without the assistance of an attorney. Further, it bears noting that, although they can be synonymous, the verbs "discharge" and "terminate" are not necessarily coextensive. *Compare, e.g.*, *Terminate*, Oxford English Dictionary, https://www.oed.com/dictionary/terminate_v?tab=meaning_and_use#18958128 (last visited Aug. 29, 2024) (defining "terminate" as, inter alia, "[t]o dismiss" from employment or "to sack"), *with Discharge*, Oxford English Dictionary,

---

[13] Although Defendant suggests that Plaintiff has impermissibly changed her story, the Court trusts that Plaintiff's attorneys are aware of their obligations under Rule 11(b) of the Federal Rules of Civil Procedure.

https://www.oed.com/dictionary/discharge_v?tab=meaning_and_use#6681973 (last visited Aug.

29, 2024) (defining "discharge" as "[t]o . . . release (a person) from . . . employment[,]" among

other things). Thus, insofar as she was furloughed at the beginning of the COVID-19 pandemic,

it is not necessarily inconsistent to say that she was "discharged," i.e., "released" from her job at

the Hotels.[14]

To sum up, in connection with her Title VII and NYSHRL retaliation claims, Plaintiff has

plausibly alleged that, after many months of being strung along by Defendant with promises of

potentially returning to work at the Hotels, Plaintiff's position was filled by individuals who

were neither pregnant nor recently postpartum. *See supra* Sections I.A.4–5. Then, when she

filed an EEOC Charge concerning her alleged mistreatment by Defendant, Plaintiff plausibly

alleged that Defendant fired her two months later. *See supra* Section I.A.6. Accordingly, the

Court denies Defendant's Motion to the degree that it argues that Plaintiff failed to plausibly

plead that she was retaliated against for filing her EEOC Charge in violation of Title VII and the

NYSHRL.[15]

---

[14] In its Reply, Defendant contends that "the Court found that Plaintiff must have become aware of her termination at some point between March 17, 2020 and April 20, 2021, when she first alleged she had been terminated in her EEOC Charge." (Def's Reply 12 (citing Op. & Order 9).) However, Defendant cites no authority in support of the notion that the Court is irrevocably bound by a comment in a prior opinion that concerned a pro se complaint alleging far fewer facts than those raised in the SAC.

[15] To the extent Defendant asserts that Plaintiff's allegations are false, it will have every opportunity to prove its case through discovery.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion is granted in part and denied in part.

Although Plaintiff's Title VII and NYSHRL retaliation claims remain alive, she may only

proceed on her NYSHRL retaliation claim on the basis of her filing of the EEOC Charge.  The

Court will hold a telephonic conference in this case on October 25, 2024, at 12:00 PM ET.

The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt.

No. 44.)

SO ORDERED.

Dated:    September 26, 2024
          White Plains, New York

_____
                KENNETH M. KARAS
                United States District Judge